IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **KRISTEN L. PARRISH** | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-16-1177 |
| **THE TILE SHOP, LLC ET AL.,** | * | |
| Defendants | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM**

The action before the Court arises out of a lawsuit filed in the Circuit Court for Anne Arundel County by Plaintiff Kristen Parrish against her former employer and her manager. (Complaint, ECF No. 2.) Against her employer, The Tile Shop, LLC ("Tile Shop"), Plaintiff alleges discriminatory employment practices; against her former supervisor, Cedric Milton ("Milton"), she alleges tortious interference with prospective advantage. (*Id.*) Tile Shop subsequently filed a notice to remove the case to this Court on the basis of diversity jurisdiction. (Notice of Removal, ECF No. 1.)

Pending before the Court are motions to dismiss by Tile Shop (ECF No. 11) and by Milton (ECF No. 25) and a motion to remand by Plaintiff (ECF No. 26). These motions are fully briefed, and no hearing is necessary, Local Rule 105.6 (D. Md. 2016). Also pending is the defendants' joint motion for leave to file a surreply associated with Plaintiff's motion to remand (ECF No. 31). For the reasons stated below, Defendant Milton's motion to dismiss will be granted, and the other pending motions will be denied.

I.  *Motion to Remand*

Plaintiff initially offered two justifications in support of her motion that the case be remanded to the Circuit Court for Anne Arundel County: first, that Tile Shop failed to sufficiently allege in its notice of removal the citizenship of the parties so as to satisfy the requirements of diversity jurisdiction; and second, that Defendant Milton failed to join in Tile Shop's petition for removal. (Mem. in Supp. of Pl.'s Mot. for Remand, ECF No. 26-1.) Later, Plaintiff supplemented her motion with a third argument that Tile Shop never filed its notice in the Circuit Court for Anne Arundel County. (ECF No. 32.) For the reasons stated below, Plaintiff's motion will be denied, as will Defendants' motion to file a surreply in the briefing to that motion. (ECF No. 31.)

A.  *Defendants' Motion to File a Surreply*

Before turning to the substance of Plaintiff's motion to remand, the Court will address Defendants' motion for leave to file a surreply. Although surreplies are disfavored in this District, the Court may grant leave to file a surreply under appropriate circumstances. *See* Local Rule 105.2(a) (D. Md. 2016). One such circumstance is where the "moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004) (per curiam).

In her reply memorandum, Plaintiff argues that the statute governing a co-defendant's consent to a notice of removal was amended in 2011 and that the cases cited in Defendants' memorandum in opposition represent outdated and inapplicable law. (Pl.'s Reply in Supp. of Mot. to Remand 1–2, ECF No. 30.) Plaintiff's argument does not represent a new matter presented to the Court; rather, she is contesting the validity of the law cited by Defendants. (*See*

2

Defs.' Opp'n to Pl.'s Mot. to Remand 5–7, ECF No. 29.)  The validity of the law cited in a memorandum is often at issue in cases.  Because Defendants could have anticipated that Plaintiff would refer to statutory changes as a means of attacking the validity of the cases cited in Defendants' memorandum, Defendants' motion for leave to file a surreply is not well-founded and will be denied.

### B. *Diversity of the Parties*

Plaintiff's first argument to remand the case is that Tile Shop's notice of removal insufficiently alleged the citizenships of both defendants.  (Mem. in Supp. of Pl.'s Mot. to Remand 2–4.)  Plaintiff seems to object primarily to an alleged defect in the notice of removal rather than claiming an actual lack of jurisdiction.  In either case, Plaintiff fails to defeat removal.

When a notice of removal filed pursuant to section 1446(a) is defective for any reason other than a lack of subject matter jurisdiction, the opposing party waives its right to seek remand when it does not address such a defect within thirty days.  28 U.S.C. § 1447(c).  A defect in pleading the citizenship of parties in a notice of removal based on diversity jurisdiction is procedural rather than jurisdictional.  *Doe v. Blair*, 819 F.3d 64, 67–68 (4th Cir. 2016).

To the extent that Plaintiff argues that Tile Shop's notice of removal is deficient, such an objection is time-barred.  Tile Shop filed its notice of removal on April 20, 2016, and Plaintiff did not file her motion to remand until July 8.  Therefore, Plaintiff's motion comes well past the statutory time limit to address such a deficiency.

Even if Plaintiff's motion can be construed as a factual challenge to subject-matter jurisdiction, it fails for want of merit.  For the purposes of diversity jurisdiction, one's citizenship is determined on the date a suit is filed.  *Leimbach v. Allen*, 976 F.2d 912, 917 (4th Cir. 1992).

An individual's citizenship is determined by his domicile, which is "established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (internal quotation marks omitted). Courts determine one's domicile by considering factors including residence; voter registration; location of personal and real property; location of bank accounts; place of employment or business; driver's license and automobile registration; and payment of taxes. 13E Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3612 (3d ed. & Supp. 2016). A corporation is a citizen of the state in which it is incorporated, as well as the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). A limited liability company has the citizenship of each of its members. *See Gen. Tech. Apps., Inc. v. Exro Ltda.*, 388 F.3d 114, 120 (4th Cir. 2004).

To the extent that Plaintiff questions the Court's jurisdiction to hear the case, the record contains evidence sufficient to support diversity jurisdiction. In support of their memorandum in opposition to Plaintiff's motion, Defendants offer a declaration stating that The Tile Shop, LLC has only one member: Tile Shop Holdings, Inc., and that the latter corporation is incorporated in Delaware and headquartered in Minnesota. (Decl. of Chris Homeister, ECF No. 29-2). Thus, for the purpose of determining federal diversity jurisdiction, Tile Shop is a citizen of Minnesota and Delaware, and only of those states. Defendant Milton declares that he only lived in Maryland briefly in 2015; that otherwise he has maintained his parents' home in Bealeton, Virginia, as his residence since 2004; that while he worked at Tile Shop, the Virginia address appeared on his paystubs; that his bank is in Virginia; that he pays taxes in Virginia; that his car is registered in Virginia; and that he has a Virginia driver's license. (Decl. of Cedric Milton, ECF No. 29-3.)

The only evidence in favor of Maryland ever having been Milton's domicile is his prior employment and residence there for some part of 2015. (*Id.*)[1]

### C. *The Necessity that All Defendants Consent to the Removal Petition*

Plaintiff next argues that remand is appropriate because Milton did not join in the request for removal within thirty days after being served. (Mem. in Supp. of Pl.'s Mot. to Remand 4.) Defendants respond that Milton was not required to join because the statute only applies such a requirement to those parties who were properly served before notice of removal was filed. (Defs.' Opp'n to Pl's Mot. to Remand 5.)

By statute, a defendant has thirty days after being served with a complaint in a civil matter in state court in which she might file a notice of removal to federal court. 28 U.S.C. § 1446(b)(1). In 2011, Congress added a new subsection to the removal statute to address certain situations where co-defendants are served at different times. *See* § 1446(b)(2). For example, when one defendant seeks to remove a suit to federal court, "all defendants who have been properly joined and served must join in or consent to the removal of the action," and the statute specifies that each defendant's window of opportunity to remove opens on the date he is served. *Id.* However, contrary to Plaintiff's argument (*see* Reply Mem. in Supp. of Pl.'s Mot to Remand, ECF No. 30 at 1), nothing in the statute's plain language, as it was amended in 2011, overturns the previous state of the law that held that defendants who are *unserved* at the time a removal petition is filed are *not* required to join in the petition—that the petition is *not* fatally flawed without their joinder. *See Gee v. Lucky Realty Homes, Inc.,* 210 F. Supp. 2d 732, 736 (D. Md. 2002) (describing the obligations of a party not served at the time of removal); *Humphries v.*

---

[1] If the case against Milton were to continue, Plaintiff would be able to re-visit the issue of jurisdiction if discovery raised sufficient evidence to do so. Considering that Milton's motion to dismiss is being granted, as will be explained infra, the issue is moot.

*Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014) (applying identical obligations after the most recent statutory amendment).

Tile Shop was not required to obtain Milton's consent before filing its notice of removal on April 20, 2016, because Milton was not served until May 15 (*see* ECF No. 21), and Milton was not required to join in the removal after the fact. Furthermore, even if Milton's failure to join did cause a deficiency in the removal, such a defect would not have related to subject matter jurisdiction (i.e., diversity jurisdiction would still apply). Accordingly, Plaintiff waived any objection to Milton's failure to join that she did not raise within thirty days. *See* 28 U.S.C. § 1447(c).

### D. Lack of Notice in State Court

Finally, in a "supplemental memorandum," Plaintiff raises the issue that Tile Shop failed to file its notice of removal in the Circuit Court for Anne Arundel County. (Suppl. Mem. in Supp. of Pl.'s Mot. to Remand, ECF No. 32.)[2] Without determining whether the Court should properly consider this supplement, the argument is insubstantial and non-dispositive.

It is true that, promptly after filing notice of removal to federal court, the defendant must give notice to the clerk of the state court from which the case is to be removed. 28 U.S.C. § 1446(d). However, like the other grounds discussed above, failing to notify the state court is not a defect in subject matter jurisdiction. *Peterson v. BMI Refractories*, 124 F.3d 1286, 1395 (11th Cir. 1997). Therefore, pursuant to 28 U.S.C. § 1447(c), Plaintiff waived any objections pertaining to this requirement that she did not raise within thirty days of Tile Shop's filing in federal court.

---

[2] It would appear that Tile Shop's notice of removal was originally filed in the Circuit Court for Montgomery County instead of the Circuit Court for Anne Arundel County, and that once Plaintiff called Tile Shop's attention to the problem, Tile Shop re-filed its notice of removal in the correct court. (Tile Shop's Resp. to Pl.'s Suppl. Mem. in Supp. of Pl.'s Mot. to Remand 2, ECF No. 33.)

### E. Alternate Theories of Jurisdiction

It is unnecessary to evaluate Defendants' alternate theory of fraudulent joinder or to consider their revised notice of removal. Plaintiff's motion to remand will be denied for the reasons indicated above.

## II. Standard for Dismissal for Failure to State a Claim

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## III. Allegations of the Complaint

Plaintiff, who alleges she is a gay female, began working at Tile Shop as an in-store sales associate on or about January 17, 2015. (Complaint ¶ 4.) According to the facts set forth in her Complaint, she endured discriminatory treatment by her supervisor, Milton, attributable to her sex, sexual orientation, and/or gender identity. (*Id.* at ¶ 1.) Plaintiff alleges that after a customer

spoke to Milton referring to her as "a guy," Milton began to fault her for her physical appearance. (*Id.* at ¶ 5.) Specifically, Plaintiff claims that Milton:

- Told her not to dress like a man or "cross dress";

- Told her to style her hair or to grow her hair out to look more feminine;

- Told her that she would be fired if she did not dress differently;

- Told her that "the Eastern Regional Operations Manager had asked Milton why Plaintiff dressed the way she did and that he would be returning at the end of the month and, if he saw her dressed like she was, he would grab her by the elbow and 'throw [her] out the door'"; and

- Alluded to her at a staff meeting when he told staff that customers had complained about the way the store's employees were dressed. (*Id.*)

The Complaint indicates that Tile Shop had a dress code with separate guidelines for male and female employees, and that while Plaintiff complied with the male dress code, she received criticism from Milton that was not levelled at similarly-dressed male employees. (*Id.* at ¶6.)  Finally, the Complaint recites a string of events beginning on March 13, 2015, when Milton allegedly assigned Plaintiff to rearrange the store's marble section, a task that would prevent her from serving customers and earning sales commissions during the weekend of a store promotion that was anticipated to generate increased sales. (*Id.* at ¶ 7.)  Plaintiff responded by protesting that other employees would have greater earning opportunities and that discriminatory motives were behind the decision to single her out for this task. (*Id.*)  The Complaint alleges she was suspended in response. (*Id.*)  Plaintiff was scheduled to have a conference with Milton to discuss her suspension on March 16, but after he did not respond to her text message confirming the meeting, she did not attend, and she discontinued her employment. (*Id.*)

8

Plaintiff subsequently brought a claim against Tile Shop under the Maryland Fair Employment Protection Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20-606, 20-1013 (LexisNexis 2014), in which she alleged that her supervisor's harassment and intimidation created a hostile workplace environment and that she suffered a constructive discharge due to her sex, sexual orientation, and/or gender identity. (*Id.* at ¶¶ 1, 8.) She brought a second claim against Milton individually, alleging tortious interference with prospective economic advantage. (*Id.* at ¶ 12.)

### IV.  *Motion to Dismiss Defendant The Tile Shop*

In the single count against Tile Shop, Plaintiff alleges that the employer violated MFEPA. (Complaint, Count I.) The Court construes the Complaint to present two separate theories of recovery for this alleged violation: the first based on hostile work environment and the second on the theory of constructive discharge. (Complaint ¶ 8.) Because the Complaint contains a factual basis amounting to a plausible claim for relief on both theories, the Court will deny Defendant Tile Shop's motion to dismiss.

Tile Shop contends that Plaintiff failed to respond to its argument against Plaintiff's hostile work environment claim or the intolerability and causation requirements of her constructive discharge claim and consequently alleges Plaintiff to have conceded these issues. (Reply in Supp. of Tile Shop's Mot. to Dismiss 2–3, ECF No. 22.) This argument fails to persuade. Plaintiff's memorandum in opposition may lack a structured response to some of these arguments, but on a motion to dismiss, the Court is asked to assess the sufficiency of Plaintiff's complaint, not the strength of her briefing. The Court does not find Plaintiff to have waived any arguments at this point.

As a preliminary matter, the Court notes that MFEPA is the state law analogue of Title VII, and that interpretation of claims under MFEPA is generally guided by federal cases interpreting Title VII. *Arsham v. Mayor & City Council of Balt.*, 85 F. Supp. 3d 841, 849 (D. Md. 2015). However, while Title VII protects against discrimination based on sex, it does not protect against discrimination based on sexual orientation. *Murray v. N. Carolina Dep't of Pub. Safety*, 611 F. App'x 166 (4th Cir. 2015) (per curiam). By contrast, MFEPA considers not only sex but also sexual orientation and gender identity to be protected classes. Md. Code Ann., State Gov't § 20-606 (LexisNexis 2014). Accordingly, in addressing Plaintiff's sexual orientation and gender identity claims under MFEPA, the Court will take substantial guidance from opinions deciding Title VII cases in general, even though Title VII does not technically address such claims.

### A. *Exhaustion of Administrative Remedies with Respect to Regional Manager*

As an initial point, Defendant Tile Shop argues that Plaintiff raises a new allegation in her civil complaint with respect to conduct by Tile Shop's Eastern Regional Operations Manager that was not a part of Plaintiff's initial administrative charge brought before the Maryland Commission on Civil Rights. (Mem. in Supp. of Tile Shop's Mot. to Dismiss 6–10, ECF No. 11-1.) Specifically, Tile Shop interprets the civil complaint to accuse the regional manager of threatening to "grab [Plaintiff] by the elbow and throw her at [sic] the door" if she did not change her mode of dress. (*Id.* at 6.) Because Plaintiff's previous administrative charge alleged no discriminatory conduct by the regional manager, Tile Shop requests that the Court strike this charge from the complaint for failure to exhaust. (*Id.* at 9.) This argument misconstrues Plaintiff's complaint, and the request will be denied.

MFEPA does not authorize a plaintiff to bring a lawsuit without first filing administrative charges. Md. Code Ann. State Gov't § 20-1013(a)(1) (LexisNexis 2014). Furthermore, the scope of the civil action is confined by the scope of the administrative charges. *See Bryant v. Bell Atlantic Md.*, 288 F.3d 124, 132 (4th Cir. 2002) (applying the same rule to suits brought under Title VII). However, in order to honor the goal that lay people be able to initiate administrative charges without the help of lawyers, courts construe administrative charges broadly to allow civil complaints that are "reasonably related" to the administrative charges. *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012).

Plaintiff did file an administrative charge of discrimination against Tile Shop, in which she outlined a number of statements and actions undertaken by Milton as her supervisor and Tile Shop's agent. (ECF No. 11-2.) Plaintiff's complaint likewise describes numerous statements and actions undertaken by Milton, including that *Milton told her* that the Eastern Regional Operations Manager had inquired about her mode of dress and threatened to "throw [her] out the door" if she did not comport with expectations. (Complaint ¶ 5.) Tile Shop interprets this description as a "new allegation[] that the Tile Shop Eastern Regional Operations Manager is also a 'bad actor.'" (Mem. in Supp. of Tile Shop's Mot. to Dismiss 6.) However, the Court interprets this alleged event not as a new accusation against the regional manager, but rather as another specific example of an alleged discriminatory statement by Milton, who purported to quote the regional manager to Plaintiff. As such, it falls within the course of conduct alleged in the administrative charge. Thus, the Court concludes Plaintiff has exhausted her administrative remedies as to Count I.

B. *Hostile Work Environment Theory*

Defendant Tile Shop argues that Plaintiff's allegations fail to show sufficient severity and pervasiveness to amount to a hostile work environment and that the Complaint does not sufficiently impute liability to the Tile Shop for Milton's actions. (Mem. in Supp. of Tile Shop's Mot. to Dismiss 10–15.)

To demonstrate a hostile work environment under Title VII, a plaintiff must show that there is 1) unwelcome conduct 2) based on plaintiff's membership in a protected class, 3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment, and 4) which may be imputed to the employer. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc).[3] Element three requires a showing that a reasonable person in the plaintiff's position would perceive the environment as hostile. *Id.* The judgment regarding the severity or pervasiveness of the conduct must consider all of the circumstances, with the status of the harasser (i.e. supervisor versus co-worker) being an important factor. *Id.* at 277–78. As to the fourth element, an employer is "strictly liable for the supervisor's harassing behavior if it culminates in a tangible employment action." *Id.* at 278 (internal quotation marks omitted).

Tile Shop concedes, for the purposes of the present motion, that Plaintiff has pled sufficient facts to satisfy elements one and two of a hostile work environment, but argues that the Complaint fails to sufficiently plead elements three and four. (Mem. in Supp. of Tile Shop's Mot. to Dismiss 10.) As to the third element, dealing with severity and pervasiveness, the facts Plaintiff alleges in her complaint, if accepted as true, are in their totality sufficient such that a reasonable person could perceive an abusive work environment. Plaintiff claims that Milton told

---

[3] Again, the Court applies Title VII law to guide its interpretation of an MFEPA claim. *See Arsham*, 85 F. Supp. 3d at 849. In the instant case, it does so recognizing that the MFEPA claim covers protected categories (sexual orientation and gender identity) not covered by Title VII.

her that customers complained about her clothing, that he told her to grow her hair out, that he threatened to fire her if she did not dress "like a woman," that he called attention to her mode of dress in staff meetings, that he claimed the regional manager was upset about her adopting a masculine manner of dress, that he gave her an assignment that diminished her earning capacity, and that he suspended her for complaining of discrimination. (Mem. in Opp'n to Tile Shop's Mot. to Dismiss 5–6, ECF No. 19.) Particularly relevant to this calculation are the facts that the purveyor of the alleged discriminatory conduct was Plaintiff's supervisor and that the events she alleges took place appear to have pervaded her relatively brief period of employment.

Tile Shop also argues that Plaintiff has failed to connect her assignment to organize the marble section (and her resulting missed commissions) or her suspension to any motive based on her sex, sexual orientation, or gender identity. (Mem. in Supp. of Tile Shop's Mot. to Dismiss 21–28.) Without such a connection, these two critical events would not be among the factors contributing to the allegedly severe and pervasive hostility of the work environment. However, according to her allegations, Milton suspended her not simply in response to insubordination, but in response to her accusation that he assigned her to an undesirable task because of her sex, sexual orientation, or gender identity. (Complaint ¶7.) Whether a fact-finder credits Plaintiff's proffered sequence of events, and thereafter concludes that Milton suspended her in retaliation for her accusation of discrimination is not a question to be answered on a motion to dismiss, but because such a response is reasonably possible on the facts alleged, Plaintiff's complaint is sufficient under Rule 8(a)(2).

With respect to imputing Milton's actions to Tile Shop, Plaintiff alleges that Milton, her supervisor, threatened to fire her if she did not wear different clothes, and that he suspended her as a punishment for protesting Milton's discriminatory actions. (Complaint ¶ 5, 7.) Because

these allegations amount to tangible employment action taken by a supervisor, they may be imputed to Tile Shop. *See Vance v. Ball State U.*, 133 S. Ct. 2434, 2445 (2013) (equating the ability to take tangible employment actions with the ability to suspend an employee); *Lewis v. Forest Pharm., Inc.*, 217 F. Supp. 2d 638, 648 (D. Md. 2002) (finding that a letter threatening suspension amounted to a tangible employment action).

Plaintiff's allegations, if true, would be sufficient to show that the two contested elements are present; therefore, her Complaint survives a motion to dismiss on the basis of her hostile work environment claim against Tile Shop.

### C. *Constructive Discharge Theory*

In opposition to Plaintiff's constructive discharge theory, Tile Shop argues that Plaintiff has failed to plead facts sufficient to show that Tile Shop deliberately caused her resignation, that conditions were so intolerable that a reasonable person in her position would feel she had no choice but to resign, or that there was a connection between her constructive discharge and her membership in a protected class. (Mem. in Supp. of Tile Shop's Mot. to Dismiss 15–19, 27–28.) The Court disagrees.

An abusive discharge takes place when an employer terminates an at-will employee under a motivation contrary to public policy. *Beye v. Bureau of Nat. Affairs*, 477 A.2d 1197, 1200 (Md. Ct. Spec. App. 1984). Under the doctrine of "constructive discharge," Maryland courts extend the abusive discharge concept to employees who resign as a result of employer coercion. *Id.* at 1201. "The applicable standard to determine if the resignation is, in effect, a constructive discharge, is whether the employer has deliberately caused or allowed the employee's working conditions to become so intolerable that a reasonable person in the employee's place would have felt compelled to resign." *Id.* at 1203. "The standard for

constructive discharge requires a plaintiff to show both intolerable working conditions *and* a deliberate effort by the employer to force the employee to quit." *Johnson v. Shalala*, 991 F.2d 126, 131 (4th Cir. 1993) (emphasis added). Deliberate effort may be shown by actual evidence of intent to persuade the employee to resign or by circumstantial evidence of such intent, "including a series of actions that single out a plaintiff for differential treatment." *Id.* "If the requisite elements of constructive discharge are demonstrated, the Court indulges in the legal fiction that the employee's voluntary resignation was, in actuality, involuntary termination of the employee's employment by the employer." *Crockett v. SRA Int'l*, 943 F. Supp. 2d 565, 576 (D. Md. 2013).

Plaintiff has alleged facts sufficient to make out a plausible claim that hostile working conditions prevailed during her time at Tile Shop and that Milton's treatment of her was based on her membership in a protected class or classes. *See supra*. Furthermore, while Plaintiff does not plead facts that directly demonstrate Milton intentionally encouraged her to quit, she has alleged a series of actions singling her out for differential treatment (e.g., she claims she alone received reprimands concerning her appearance despite being dressed similarly to her male colleagues, and she alleges that she alone was assigned to reorganize a section of the store on a busy sales weekend). Those allegations may amount to circumstantial evidence of deliberate effort to force Plaintiff's resignation. Therefore, they constitute a plausible claim for relief sufficient to survive Tile Shop's motion to dismiss.

## V. *Motion to Dismiss Defendant Milton*

Defendant Milton argues that the only claim against him, tortious interference with prospective economic advantage, should be dismissed because, among other reasons, he is an agent of Tile Shop and therefore not a "third party" with respect to Plaintiff's business with Tile

Shop.  (Def. Milton's Mot. to Dismiss 1.)  Because Tile Shop agrees that any alleged actions would have fallen within the scope of Milton's employment, and because Plaintiff has not alleged facts to the contrary, Milton's motion to dismiss the claim against him will be granted on that basis.

Maryland law recognizes the tort of intentional interference with prospective economic advantage.  *Nat. Design, Inc. v. Rouse Co.*, 485 A.2d 663, 675 (1984).  However, Maryland does not allow recovery under this tort when both the plaintiff and defendant were parties to the economic relationship in question, nor does it allow recovery when defendant is an employee, acting within the scope of employment, who allegedly interferes with "the contract, business relationships, or economic relationships, between the employer and another." *Bleich v. Florence Crittenton Servs. of Balt., Inc.*, 632 A.2d 463, 475 (Md. Ct. Spec. App. 1993).

Plaintiff frames her tort claim against Milton as an alternate theory of recovery offered to guard against Tile Shop's potential defenses that Milton was not its agent or that his alleged conduct was beyond the scope of his employment.  (Mem. in Opp'n. to Milton's Mot. to Dismiss 1, ECF No. 27.)  Tile Shop submits that it will not raise such defenses. (Def. Milton's Reply in Supp. of Mot. to Dismiss 1, ECF No. 28.)  The Court interprets this assurance as a concession that at the relevant times, Milton was employed by Tile Shop, that he was assigned to be Plaintiff's supervisor, and that any instructions or punishments Milton dispensed to Plaintiff were issued within the scope of his employment.  Under such circumstances, Milton could not have committed the tort of intentional interference with respect to Plaintiff's employment at Tile Shop.  Milton's motion to dismiss will be granted.

*VI. Conclusion*

By separate order, Tile Shop's motion to dismiss (ECF No. 11) will be denied; Plaintiff's motion to remand (ECF No. 26) will be denied; Defendants' joint motion for leave to file a surreply (ECF No. 31) will be denied; and Milton's motion to dismiss (ECF No. 25) will be granted.

A separate order will issue.

DATED this 29th day of September, 2016.

BY THE COURT:

/s/
James K. Bredar
United States District Judge